United States District Court
Southern District of Texas
**ENTERED**
July 24, 2019
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| PAMELA ZIOLKOWSKI MARGOLIS, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 1:18-cv-162 |
| | § | |
| JAMES B. NUTTER & COMPANY, and | § | |
| BEN CARSON, SECRETARY, DEP'T | § | |
| OF HOUSING AND URBAN | § | |
| DEVELOPMENT, | § | |
| Defendants. | § | |

## MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

The Court is in receipt of Defendant James B. Nutter & Company's ("JBNC")
Motion to Dismiss (hereinafter, JBNC's "Motion" or "Motion to Dismiss").  Dkt. No.
24.   For the reasons stated below, it is recommended that JBNC's Motion be
**GRANTED**, and that all claims against JBNC be **DISMISSED**.

## I.      Background and Procedural History

Plaintiff Pamela Ziolkowski Margolis ("Margolis"), her husband, and her mother
purchased a home located in Brownsville, Texas[1]  (the "Property") in 2007.  In May
of 2008, Margolis' husband and Margolis' mother obtained a Home Equity Conversion
Mortgage ("HECM") through Griffin Financial Mortgage, LLC ("Griffin Financial").[2]

---

[1] *See* Dkt. No. 20-2 at 6 (describing the Property).
[2] Although Griffin Financial was initially named as a defendant in this lawsuit (Dkt. No. 1-2), Margolis
has since filed a "Notice of Nonsuit" regarding Griffin Financial (Dkt. No. 12), thereby dismissing her
claims against it.

Griffin Financial subsequently assigned the HECM to JBNC.  Margolis' mother passed away on December 20, 2009; and Margolis' husband passed away on October 1, 2016.  As a result, the outstanding balance of the HECM became due and payable.  This suit stems from Margolis' efforts to prevent foreclosure on the Property.

## A. The Reverse Mortgage Program

The Court begins with an overview of reserve mortgages before turning to the specific facts of this case.  Home equity conversion mortgages, sometimes referred to as "reverse mortgages," allow older homeowners to receive liquid assets—typically in the form of cash or credit—in exchange for their home equity.  12 U.S.C. § 1715z-20(a); *see also Larsen v. OneWest Bank, FSB*, 2015 WL 6768722, at *4 (Tex. App.—Houston [14th Dist.] Nov. 5, 2015, no pet.) (citing J. Alton Alsup, *The New and Improved Texas Reverse Mortgage*, 55 CONSUMER FIN. L.Q. REP. 207, 209 (2001)).  In this arrangement, "the borrower receives either a lump sum, periodic payments, or a line of credit from a lender based on [his or her] accumulated equity." *Estate of Jones v. Live Well Financial, Inc.*, 2017 WL 4176661, at *1 (N.D. Ga. Sept. 20, 2017).  "Though interest is charged each month, unlike a traditional mortgage, an HECM loan is generally not repaid until a specific 'trigger' event occurs, such as the death of the borrower or the sale of the home." *Plunkett v. Castro*, 67 F. Supp. 3d 1, 6 (D. D.C. 2014) (citing 24 C.F.R. § 206.27(c)(1)).  An HECM loan is a non-recourse loan; the reverse mortgage is secured by the borrower's home, so "the lender may only recover the borrower's house (or the sale value thereof)." *Id*.  As a non-recourse loan, an HECM creates a risk that "the lender may suffer a financial loss if the value of the

home at the time of the triggering event is less than the outstanding balance on the HECM loan." *Id.*

"Congress, worried that this risk would deter lenders from entering the reverse mortgage market, created a mortgage-insurance program, administered by the Department of Housing and Urban Development ("HUD"), as an incentive for lenders to provide reverse mortgages." *Estate of Jones*, 2017 WL 4176661, at* 1 (citing *Bennet v. Donovan*, 703 F.3d 582, 585 (D.C. Cir. 2013)). "This insurance program protects lenders from financial loss if certain conditions are met." *Id.*; *see also* 12 U.S.C. § 1715z-20. For HUD-insured reverse mortgage loan documents signed prior to August 4, 2014—such as those at issue in the instant case—lenders could require payment in full of all sums upon the death of the last surviving borrower. The result of this provision was that many spouses of borrowers—so-called "non-borrowing spouses"—faced foreclosure upon the death of the borrowing spouse. A host of legal challenges ensued, leading HUD to change its regulations. HUD issued Mortgagee Letter 2014-07 which provided that HECM loans initiated after August 4, 2014 were required to "contain a provision deferring the due and payable status of the loan until the death of the non-borrowing spouse." *Plunkett*, 67 F. Supp. 3d at 7; *see also* HUD, Mortgagee Letter 2014-07 (Apr. 24, 2014); 24 C.F.R. §§ 206.27(c), 206.55 (effective Sept. 19, 2017).

However, reverse mortgages issued before August 4, 2014 still lacked protection for non-borrowing spouses if their borrowing spouses predeceased them. Attempting to address this shortcoming, HUD issued additional requirements in Mortgagee

Letter 2015-03. *Fed. Nat'l Mortgage Ass'n v. Takas*, 2017 WL 3016785, at *3 (D. Utah July 14, 2017); HUD, Mortgagee Letter 2015-03 (Jan. 29, 2015). Mortgagee Letter 2015-03 provided lenders of HECM loans issued before August 4, 2014 with the Mortgagee Optional Election ("MOE") Program, which allowed the lenders to elect, at their sole option, to assign the loans to HUD instead of electing to foreclose as allowed by HECM loan documents. HUD, Mortgagee Letter 2015-03 (Jan. 29, 2015); *see also Bombet v. Donovan*, 2015 WL 1276569, at *4 (M.D. La. Mar. 19, 2015). "Mortgage[e] Letter 2015-03 was superseded and replaced by Mortgage[e] Letter 2015-15, which left in place the MOE [Program] but clarified that HUD was not interfering with the rights retained by lenders under the original mortgage contracts." *Takas*, 2017 WL 3016785, at *3; *see also* HUD, Mortgagee Letter 2015-15 (June 12, 2015).

In sum, the MOE Program allows a reverse-mortgage lender, at its election, to assign the reverse mortgage to HUD when the last surviving borrower dies and the non-borrowing spouse has met certain criteria. Once HUD accepts assignment of the reverse mortgage, non-borrowing spouses are protected from displacement as long as they continue to maintain eligibility. The MOE Program is applicable to HUD-insured reverse mortgages that were issued prior to August 4, 2014, provided that the surviving, non-borrowing spouse meets certain requirements and HUD accepts assignment of the loan.

### B. Decedents' Reverse Mortgage

In January 2007, Margolis, Margolis' husband, and Margolis' mother (hereinafter, collectively, "the Family") acquired the Property.  Dkt. No. 20 at 4.  The following year, due to financial difficulties, the Family sought to take out the HECM at issue here on their equity in the Property through Griffin Financial.  *Id*.; *see also* Dkt. No. 20-3.  HUD, which regulates HECMs in the United States, requires that HECM borrowers be at least sixty-two years old.  24 C.F.R. § 206.33.  Because Margolis was under sixty-two in 2008, she assigned her interest in the Property to her mother and husband so that they could obtain the HECM.  Dkt. No. 20-2 at 2−7; *see also* Dkt. No. 20 at 4.

On May 21, 2008, Griffin assigned its interest in the HECM to JBNC.  Dkt. No. 20-4.  Margolis' mother passed away on December 20, 2009, and her interest in the Property passed to Margolis and Margolis' sister.  Dkt. No. 20-5  Margolis acquired her sister's interest though a gift deed, executed shortly thereafter.  Dkt. No. 20-6 at 3−5.  Then, on October 1, 2016, Margolis' husband passed away.  Dkt. No. 20-7.  His interest in the Property passed to his three children and to Margolis.  *Id.*  Each of the children then executed gift deeds, transferring their respective interests in the Property to Margolis.  Dkt. No. 20-8 at 3−9.  As a result, Margolis had a 100% interest in the Property.

Pursuant to the Deed of Trust, the Note associated with the HECM on the Property became "immediately due and payable" upon Margolis' husband's death. *See* Dkt. No. 20-3 at 7 ("Lender may require immediate payment of all sums secured

by this Security Instrument if: (i) All Borrowers die[.]").  JBNC notified Margolis of the due-and-payable status of the Note in writing on November 22, 2016. Dkt. No. 20-9.  In response, Margolis obtained counsel, Renee Sanchez.  Sanchez sent JBNC a letter demanding that JBNC seek to assign the HECM to HUD pursuant to the MOE Program.  Dkt. No. 20-10.  JBNC replied[3] on January 3, 2017, informing Margolis and Sanchez that JBNC was reviewing Margolis' file, and once it reached "a determination as to [Margolis'] eligibility" for the MOE Program, JBNC would "advise HUD accordingly." Dkt. No. 20-13 at 2–3.  On February 14, 2017, JBNC sent another letter to Margolis, listing additional conditions that Margolis needed to meet in order for JBNC to "approve" her application to the MOE Program.  Dkt. No. 20-14.  Margolis complied, and JBNC sent a letter to Margolis' counsel stating that Margolis was "eligible to participate" in the MOE Program, explaining that this determination meant JBNC would "submit [Margolis'] documentation to HUD for final review and approval." Dkt. No. 20-15 at 2.  JBNC added that "[i]f HUD approves the application, Mrs. Margolis will be able to continue to occupy the property securing her spouse's Home Equity Conversion Mortgage as her principal residence, provided that she continue[d] to satisfy certain requirements." *Id.*

On May 3, 2017, JBNC informed Margolis, through her counsel, that JBNC would "begin the process of submitting [her]" MOE Program application to HUD "for final review." Dkt. No. 20-19 at 2.  JBNC further notified Margolis that, "[s]hould HUD accept [her] MOE Program application," Margolis would "receive a letter directly from

---

[3] For purposes of the Report and Recommendation, the Court will refer to the collective letters that JBNC sent during this time period—throughout 2017 and into early 2018—as the "JBNC Letters."

HUD's contractor stating her [her] application ha[d] been approved." *Id.*  JBNC later sent Margolis a "Notice of Intent to Foreclose" on the Property.  Dkt. No. 20-20. Thereafter, JBNC and Margolis, through Sanchez, exchanged a series of letters, phone calls, and e-mails.  *See* Dkt. Nos. 20-21 through 20-24.  Though unclear, the record does not indicate that Margolis was ever approved by HUD for the MOE Program.

## C. Instant Case

Margolis filed this lawsuit against both Griffin Financial and JBNC in the 404th District Court for Cameron County, Texas on August 13, 2018.  Dkt. No. 1-2 at 2.  On October 12, 2018, JBNC—arguing that Griffin was improperly joined—timely removed this action to federal court.  Dkt. No. 1 at 2−3.  The Court ordered Margolis to re-file an amended complaint that conformed to the Federal Rules of Civil Procedure and the Local Rules for the Southern District of Texas.  Dkt. No. 9. Margolis then filed a "Notice of Nonsuit" regarding Griffin Financial, and an "Amended Petition" which added Ben Carson in his capacity as Secretary of HUD as a defendant.[4]  *See* Dkt. Nos. 12, 13.    Four days later, Margolis filed yet another amended pleading, titled her "First Amended Complaint."  Dkt. No. 15.  Because she had neither sought written permission from the other parties, nor sought leave to amend, the Court struck Margolis' "First Amended Complaint."  Dkt. No. 17. Margolis subsequently filed a "Motion for Leave to File Amended Petition." Dkt. No.

---

[4] Although Secretary Carson was named as a defendant in January 2019, he was not properly served until June of 2019.  *See* Minute Entry Dated May 28, 2019 (providing Margolis a 21-day extension to properly serve Secretary Carson).

19.  The Court granted her Motion for Leave, and Margolis filed her "First Amended Original Petition" (hereinafter, Margolis' "Complaint") on January 30, 2019.  *See* Dkt. Nos. 20, 21.

JBNC filed a "Motion to Dismiss for Failure to State a Claim" (hereinafter, JBNC's "Motion" or "Motion to Dismiss") in response to Margolis' Complaint.[5]  Dkt. No. 24. Margolis filed her "Response to Motion to Dismiss" (hereinafter, Margolis' "Response") on March 29, 2019.[6]  JBNC has filed a "Reply in Support of Its Motion to Dismiss."  Dkt. No. 35.  In her Complaint, Margolis brings fifteen claims against JBNC.[7]  JBNC has moved for all claims against it to be dismissed with prejudice.

## II.    Legal Standards

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted.  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).  The complaint must be liberally construed in favor of the plaintiff,

---

[5] JBNC previously filed a "Rule 12(c) Motion for Judgment on the Pleadings."  Dkt. No. 8.  After Margolis filed her amended pleading, the Court denied JBNC's Rule 12(c) Motion without prejudice to refiling.  Dkt. No. 46 at 2.

[6] Margolis initially filed a Response on March 13, 2019; however, the Response was untimely, and she failed to file a motion for leave to file an out-of-time response.  *See* Dkt. Nos. 27, 28.  The Court struck her first attempt to file a response.  Margolis then filed a "Motion for Leave to File an Out-of-Time Response," (Dkt. No. 29), but did not include a certificate of conference as required by the Local Rules. The Court ordered her to supplement her Motion for Leave.  Dkt. No. 31.  After filing a certificate of conference (Dkt. No. 32), the Court granted Margolis' request to file her Response out-of-time.  Dkt. No. 33.

[7] These claims, in the order presented in Margolis' Complaint are: wrongful foreclosure, deceptive trade practices, common law fraud, gross negligence, age discrimination, gender discrimination, breach of fiduciary duty, negligence, promissory estoppel, negligent misrepresentation, fraud in the inducement, breach of contract, a petition for declaratory judgment, violation of the Texas Constitution, and attorneys' fees.

and all well-pleaded facts in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation and citations omitted); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679; *see also S.E.C. v. Cuban*, 620 F.3d 551, 553 (5th Cir. 2010). "[C]onclusory allegations, unwarranted factual inferences, [and] legal conclusions" need not be accepted as true. *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997).

## III.   Discussion

Margolis' Complaint asserts an array of causes of action. JBNC has moved for dismissal of all claims brought against it. The Court will address each claim below, although not in the order presented in the Complaint.

### A. Deceptive Trade Practices Act Claims

Margolis brings claims against JBNC for engaging in "deceptive trade practices." Dkt. No. 20 at 9–10. She alleges that JBNC violated five different subsections of the

Texas Business & Commerce Code (§§ 17.46(b)(2), 17.46(b)(3), 17.46(b)(5), 17.46(b)(7), and 17.46(b)(24)), commonly referred to as the Deceptive Trade Practices Act (the "DTPA"). *See* Dkt. No. 20 at 9–10.  In order to maintain a claim under the DTPA, a plaintiff must fall within the DTPA's definition of "consumer."[8]  *Cushman v. GC Services, LP*, 397 F. App'x 24, 27–28 (5th Cir. 2010); *Hunt v. City of Diboll*, 574 S.W.3d 406 (Tex. App.—Tyler Nov. 8, 2017) (pet. filed).  The DTPA defines a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services[.]"[9]  *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 195 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008).  Even in cases involving traditional mortgage loans obtained for the purpose of purchasing a house, "subsequent actions related to mortgage accounts—for example, extensions of further credit or modifications of the original loan—do not satisfy the 'good or services' element of the DTPA."  *Broyles v. Chase Home Fin.*, 2011 WL 1428904, at *4 (N.D. Tex. Apr. 13, 2011).

Margolis has neither alleged nor presented evidence that she bought or leased any good or service from JBNC.  Rather, she claims to have requested JBNC gratuitously apply to a government program—the MOE Program—on her behalf.[10]   Dkt. No. 20

---

[8] Where plaintiffs fail to demonstrate that they were "consumers," they do not have standing for claims under the DTPA.  *Cushman*, 397 F. App'x at 27–28 (5th Cir. 2010) (finding that "a claimant under the DTPA must . . . have 'consumer' status in order to have standing"); *see also Nixon v. Goldman Sachs Mortg. Corp.*, 2013 WL 3324216, at *4 (reasoning that, because the "Plaintiff ha[d] failed to demonstrate that he [wa]s a 'consumer' under the DTPA," he "lack[ed] standing to bring" his DTPA claims).

[9] Tex. Bus. & Com. Code § 17.45(4).

[10] Margolis has not demonstrated any contractual requirement in the Note or Deed of Trust for JBNC to apply to assign her loan to HUD.  HUD's own regulations make it clear that submitting a loan to

at 6.  Margolis has not identified a single case, and the Court has uncovered none, where a Texas court has held that an individual in this sort of relationship qualifies as a consumer.  In fact, in an analogous series of cases whereby mortgagees assigned loans to the federal government for refinancing,[11] courts explicitly held the individual beneficiary is *not* a consumer for purposes of the DTPA.  *Montalvo v. Bank of America Corp.*, 864 F. Supp. 2d 567, 580 (W.D. Tex. 2012) (collecting cases); *see also Rayford v. Maselli*, 73 S.W.3d 410, 411 (Tex. App.—Houston [1st Dist.] 2002) (reasoning that, because a "gratuitous act is not a purchased good or service under the DTPA," beneficiaries of gratuitous services are *not* DTPA consumers).  Margolis has failed to plausibly allege that she is a consumer for purposes of the DPTA, and all claims asserting that JBNC violated the DPTA should be dismissed.

## B. Wrongful Foreclosure

Margolis also brings a claim for wrongful foreclosure, based on allegations that JBNC "initiated forfeiture proceedings against [Margolis] in violation of law and the agreements between them governing the Property."  Dkt. No. 20 at 9.  "A wrongful-foreclosure claim under Texas law has three elements: (i) a defect in the foreclosure sale proceedings; (ii) a grossly inadequate selling price; and (iii) a causal connection between the defect and the grossly inadequate selling price."  *Villarreal v. Wells Fargo*

---

HUD—as opposed to proceeding in foreclosure—is entirely at the mortgagee's option.  *See* HUD, Mortgagee Letter 2015-15, at 8 (June 12, 2015) ("A mortgagee *may elect* to proceed in accordance with the amendment provided by this Mortgagee Letter, which provides for an *optional assignment* of an eligible HECM[.]") (emphasis added).

[11] Although these cases involve a different government program—the "Home Affordable Modification Program"—the relationship of an applicant for both programs to the intermediary is substantially similar.  Under both HAMP and the MOE Program, a mortgagee may elect to assign the mortgage of a certain class of mortgagors to the federal government for refinancing upon a triggering event.

*Bank, N.A.*, 814 F.3d 763, 767–68 (5th Cir. 2016) (internal quotation marks and citations omitted).  Where a plaintiff "never lost possession" of the property at issue in a suit for wrongful foreclosure, the plaintiff has "fail[ed] to state a viable claim for wrongful foreclosure[.]"  *James v. Wells Fargo Bank, N.A.*, 533 F. App'x 444, 446 (5th Cir. 2013).  "[C]ourts in Texas do not recognize an action for attempted wrongful foreclosure."  *Motten v. Chase Home Finan.*, 831 F. Supp.2d 988, 1008 (S.D. Tex. 2011) (internal quotation and citation omitted).

Here, Margolis does not allege that the Property was ever sold.  Her Complaint bases this cause of action on the *initiation* of forfeiture proceedings, which JBNC later abandoned.  Dkt. No. 20 at 9; Dkt. No. 24 at 28; *see also James B. Nutter & Co. v. Unknown Heirs of Herbert Margolis, Deceased*, Case No. 2017-DCL-05559 (404th Dist. Ct., Cameron County, Tex. Aug. 18, 2017).  Margolis has not alleged that JBNC foreclosed on the Property.  Because she has not plausibly alleged a wrongful foreclosure occurred, Margolis' wrongful foreclosure claim should be dismissed.

### C. Breach of Contract

Margolis brings a claim against JBNC for breach of contract.  She alleges that "HUD regulations are incorporated into the reverse mortgage loan agreements," and that JBNC "breached the reverse mortgage loan agreements by failing to comply with the HUD regulations."  Dkt. No. 20 at 13.  Margolis has failed to demonstrate that the HUD regulations were, in fact, incorporated into the reverse mortgage agreements.  Critically, she does not cite which provision of the Deed of Trust—or other mortgage-related document—she believes incorporates any HUD regulations

into the agreement.[12]  JBNC raised this argument in its Motion to Dismiss (Dkt. No. 24 at 14), and Margolis did not refute it in her Response.

"HUD regulations govern the relationship between the reverse-mortgage lender and HUD as insurer of the loan.  HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement." *Johnson v. World Alliance Finan. Corp.*, 830 F.3d 192, 196 (5th Cir. 2016) (citing *Smith v. JPMorgan Chase Bank, N.A.*, 519 F. App'x 861, 864 (5th Cir. 2013) (holding that federal statutes and regulations can form the basis of a breach of contract claim if expressly incorporated into the contract); *Anderson v. Compass Bank*, 2014 WL 5468132, at *5 (S.D. Tex. Oct. 28, 2014) (determining that a "general reference to 'federal laws' in a Deed of Trust, on which plaintiffs relied, was insufficient to support their breach of contract claim."); *Chandler v. Wells Fargo Bank, N.A.*, 2014 WL 31315, at *5–6 (N.D. Calif. Jan. 3, 2014), *aff'd* 637 F. App'x 413 (9th Cir. 2016) (dismissing a breach of contract claim, in part because the plaintiff could not identify "a particular provision of the HECM incorporating HUD regulations" and noting the reluctance of courts to incorporate HUD regulations into a contract unless the regulations are *explicitly* incorporated)).

In this case, none of the provided agreements between Margolis and JBNC expressly incorporate HUD regulations.  *See, e.g.*, Dkt. No. 20-3.  Although some of the documents make a general reference to federal law, the Fifth Circuit has held

---

[12] In her Complaint, Margolis merely asserts that some unspecified "HUD regulations are incorporated into the reverse mortgage loan agreements."  At no point does she identify *which* HUD regulations she believes were incorporated, nor which documents provide the basis for her belief that any such regulations were expressly incorporated.

that this is insufficient as a matter of law.  *Johnson*, 830 F.3d at 196; *see also Law v. Ocwen Loan Servicing, LLC*, 587 F. App'x 790, 794 (5th Cir. 2014) (explaining that "[a] deed of trust's mere mention that federal law applies can hardly be construed as affording a private cause of action under statutes that do not provide one").  Margolis consequently has no private cause of action stemming from any of JBNC's alleged failures to abide by HUD Regulations.  All claims against JBNC based on alleged violations of HUD Regulations should therefore be dismissed.

### D. Fraud-Based Claims

Margolis also brings a claim for common law fraud, and a related claim for fraud in the inducement.  Dkt. No. 20 at 10, 13.  Her Complaint is unclear regarding who made material misrepresentations, and which particular representations Margolis is asserting were false.   Earlier in the Complaint, while describing the actions she believes form the basis of her causes of action, Margolis describes letters she received from "Jerry Garcia," an employee of JBNC.  *Id.* at 7.  She states that she received letters from Garcia indicating she was "eligible to participate" in the MOE program, and other similar language.  *Id.*  In her Response, Margolis cites these paragraphs of her Complaint to refute JBNC's argument that she had failed to identify any misrepresentations made by JBNC.  *See* Dkt. No. 24 at 10; Dkt. No. 34 at 5.  Margolis clarifies in her Response that these statements regarding her "eligibility" for the MOE Program form the basis of her fraud, fraud in the inducement, negligence, and promissory estoppel claims.  Dkt. No. 34 at 5.

"Under Texas law, the elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 674 (5th Cir. 2015). Fraud claims are subject to a heightened pleading requirement and a plaintiff must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (citing *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).

Here, Margolis appears to base her common law fraud claim on correspondence she received from JBNC from February 15, 2017 (Dkt. No. 20-15), March 6, 2017 (Dkt. No. 20-16), and April 13, 2017 (Dkt. No. 20-17). Margolis claims that employees of JBNC represented to her that JBNC "had approved her for the MOE Program," and that she was "eligible to participate in HUD's MOE Program." Dkt. No. 20 at 7; *see also* Dkt. No. 34 at 5 (citing Dkt. No. 20 at 7 as JBNC's "false representations"). However, Margolis' characterization of these statements as "false" is misguided; each of the letters Margolis cites contains qualifying language. For example, the February 15 Letter states that JBNC "will submit [Margolis'] documentation to HUD for final

review and approval." Dkt. No. 20-15 at 2. The February 15 Letter also clearly states that Margolis will only "be able to continue to occupy the property" if "HUD approves the application." *Id*. Further, in the April 13 Letter, JBNC clarified that, even though its internal process determined that Margolis was "eligible to participate in" the MOE Program, the internal determination merely meant that JBNC would "submit [Margolis'] documentation to HUD for final review and approval." Dkt. No. 20-17 at 2. Again, JBNC explained that "Margolis will be able to continue to occupy the property" only if "HUD approves the application." *Id*. In sum, the statements Margolis identifies as the basis of her fraud claim were heavily qualified, explaining other conditions that had to be met before her loan could be assigned to HUD for enrollment in the MOE Program. She has not, therefore, plausibly alleged that these statements were false. Accordingly, Margolis' claim for common law fraud should be dismissed.

Margolis also brings a claim for fraudulent inducement based on the same representations as her fraud claim. Dkt. No. 20 at 13. The elements of fraudulent inducement mirror those for fraud, "plus the added element that the fraud related to an agreement between the parties." In re *VNA Inc.*, 403 S.W.3d 483, 487 (Tex. App.— El Paso 2013, no pet). Because she has not sufficiently pled the elements of fraud, her fraudulent inducement claim is also subject to dismissal.[13]

---

[13] Even if the Court were to assume Margolis had pled the underlying elements for a fraud claim, Margolis has not identified an "agreement" between her and JBNC to which the alleged fraud related, and would still be subject to dismissal.

### E. Negligent Misrepresentation

Margolis also alleges that JBNC "provided information regarding existing facts to [her] in the course of [JBNC's] business, or in a transaction in which [JBNC] had a pecuniary interest." Dkt. No. 20 at 12. She alleges this information "was false," and that JBNC "did not exercise reasonable care or competence in obtaining or communicating the information." *Id.* Margolis does not provide any further information about which statements that JBNC communicated to her she believes form the basis of her negligent misrepresentation claim. As with her fraud-based claims, the Court assumes—based on her Response—that the JBNC Letters regarding Margolis' eligibility for the MOE Program form the basis of her negligent misrepresentation claim.[14]

A claim for negligent misrepresentation under Texas law consists of four elements: (1) the defendant made a misrepresentation in the course of its business, or in a transaction in which it had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in its business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005) (citing *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 357

---

[14] The Court notes that in her Response, Margolis cites to the JBNC Letters to support her "fraud, fraud in the inducement, negligence, and promissory estoppel claims[.]" Dkt. No. 34 at 5. However, because she does not cite to any other statements JBNC made that could possibly form the basis of her negligent misrepresentation claim, the Court assumes the JBNC Letters are the basis of this claim as well.

(5th Cir. 1996)); *see also Nazareth Int'l Inc. v. J.C. Penney Co.*, 287 S.W.3d 452, 460 (Tex. App.—Dallas 2009, pet. denied). The misrepresentation "must be one of existing fact, not a promise of future conduct." *Alexander v. Grand Prairie Ford, L.P.*, 2007 WL 1576260, at *6 (N. D. Tex. May 31, 2007); *accord Nunn, Yoest, Principals & Assocs., Inc. v. Union Pac. Corp.*, 69 F. App'x 658 (5th Cir. 2003) (per curiam); *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 124 (Tex. App.—Austin 2003, no pet.).

Here, as with her fraud-based claims, Margolis fails to plausibly allege that any of the statements JBNC made were false or misstatements. The JBNC Letters stated that HUD also had to approve her application for the MOE Program. *See* Dkt. No. 20-15, 20-17. She does not identify any statement made by JBNC claiming that it had the sole authority to approve or deny an assignment to HUD.

Margolis has also not demonstrated that her reliance on the JBNC Letters was justifiable. Justifiable reliance usually presents a question of fact. *Barrow-Shaver Resources Co. v. Carrizo Oil & Gas, Inc.*, 2019 WL 2668317, at *19 (Tex. June 28, 2019). But the element can be negated as a matter of law when circumstances exist under which reliance cannot be justified. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) (per curiam) ("We hold that, as a matter of law, th[e] reliance was not justifiable."); *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.) (reasoning that reliance on a representation made in a business or commercial transaction can be unjustified as a matter of law). Here, the language of the JBNC Letters negates any plausible interpretation that JBNC could unilaterally determine or ensure that she would be

accepted by HUD into the MOE Program. *See* Dkt. No. 20-15, 20-17. Even if Margolis did rely on the JBNC Letters, any reliance would not, as a matter of law, have been justifiable. For these reasons, Margolis' claim against JBNC for negligent misrepresentation should be dismissed.

### F. Promissory Estoppel

Margolis brings a claim for promissory estoppel. Dkt. No. 20 at 12. She alleges that "Defendants intended to induce [her] to believe that if she paid the delinquent property taxes, her MOE application would be approved." *Id.* She adds that she "changed her position in reliance upon those facts, thereby incurring injury." *Id.* Margolis does not explain what her position would have been absent this alleged inducement, nor does she identify what injury she incurred.

The requirements for a promissory estoppel claim in Texas are: (1) a promise; (2) the foreseeability that the promise will be relied upon by the promisee; and (3) substantial reliance by the promisee to his or her detriment. *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 360 (5th Cir. 1996) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983)). Texas also requires an independent "definite finding that injustice can be avoided only by the enforcement of the promise." *Clardy*, 88 F.3d at 360 (citing *City of Beaumont v. Excavators & Constructors, Inc.*, 870 S.W.2d 123, 137 (Tex. App.—Beaumont 1993, pet. denied). Additionally, the person seeking to enforce the promise must show that his or her reliance thereon was justified. *Clardy*, 88 F.3d at 360 (internal citation omitted).

Margolis fails to identify any statement made by JBNC that could be construed as a "promise." Once again, the statements made in the JBNC Letters contained qualifying language, explaining that HUD had to agree to accept the assignment of the Deed of Trust. *See, e.g.*, Dkt. No. 20-15, 20-17. Margolis also does not address how reliance on JBNC's alleged promise was "to her detriment." *See* Dkt. No. 20 at 12 (merely asserting the legal conclusion that Margolis "changed her position in reliance upon" JBNC's purported promise, "thereby incurring injury" without providing further detail); *see also* Dkt. No. 34 at 5 (addressing some elements of a promissory estoppel claim, but failing to identify how reliance on JBNC's Letters was to her detriment). At most, Margolis alleges that she paid delinquent property taxes as a result of JBNC's communications to her; however, she fails to explain how paying off delinquent taxes was detrimental. Margolis has failed to state a claim for promissory estoppel, and this claim against JBNC should be dismissed.

### G. Fiduciary Duty Claims

Margolis brings a claim against JBNC for breach of fiduciary duty. Dkt. No. 20 at 11−12. Under Texas law, the elements for a breach of fiduciary duty claim are: (1) the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and, (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant. *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied). Because Margolis has failed to plausibly allege that she and JBNC had a fiduciary relationship, her claim for breach of fiduciary duty should be dismissed.

Texas law recognizes two types of fiduciary relationships: formal and informal. A formal fiduciary relationship "arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers." *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (internal citations omitted). By contrast, informal fiduciary relationships arise in the context of informal moral, social, domestic, or personal relationships in which one person trusts and relies on another. *Id.* (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998)). "However, a fiduciary relationship is an extraordinary one and will not be lightly created; the mere fact that one subjectively trusts another does not, alone, indicate that [he or she] placed confidence in another in the sense demanded by fiduciary relationships, because something apart from the transaction between the parties is required." *American Medical Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 339 (Tex. App.—Houston [14th Dis.] 1991, no pet.).

Margolis does not specify whether her breach-of-fiduciary-duty claim is based on a formal or informal fiduciary relationship with JBNC. *See* Dkt. No. 20 at 11−12. She merely asserts that she had a "fiduciary relationship" with JBNC or, alternatively, a "special relationship" with JBNC which imposed fiduciary duties. *Id.* at 11. Margolis cites no authority, and the Court has found none, to support her assertion that a formal fiduciary relationship exists between mortgagees and non-borrowing spouses.[15] Instead, Margolis focuses her breach-of-fiduciary-duty claim on

---

[15] Even in the context of mortgagor-mortgagee relationships, Texas courts reject the existence of a formal fiduciary duty as a matter of law. *See, e.g.*, *Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326,

the specific nature of her relationship with JBNC.  She emphasizes her reliance on JBNC "to act for and give advice for her benefit" (Dkt. No. 20 at 11), the factors that she believes made her relationship with JBNC "markedly different from the typical borrower-servicer relationship" (Dkt. No. 34 at 4), her "months of communications with JBN[C]" (*id.*), and her "active participation in the MOE application process" (*id.*). None of these factors serve to persuade the Court to conclude a fiduciary relationship existed between JBNC and Margolis.

In order for a "special relationship" to form the basis of an informal fiduciary relationship, the special relationship "must exist prior to, and apart from, the agreement made the basis of the suit." *Associated Indem. Corp.*, 964 S.W.2d at 287. Although Texas courts are reluctant to find an informal fiduciary relationship in the borrower-lender context, when one "has been found, it has rested on extraneous facts and conduct, such as excessive lender control over, or influence in, the borrower's business activities." *Farah v. Mafrige & Kormanick, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ) (internal citations omitted).

Here, Margolis has not made any allegation that her relationship with JBNC pre-dated the assignment of her Deed of Trust from Griffin to JBNC, nor does she allege the relationship existed independent of the agreement made the basis of this suit. *See Associated Indem. Corp.*, 964 S.W.2d at 288 ("[T]he special relationship . . . must exist prior to, and apart from, the agreement made the basis of the suit."). Margolis

---

329 (5th Cir. 2013) (citing *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App.—Corpus Christi 2005, pet. denied)).  Margolis' relationship with JBNC, as a non-borrowing spouse, was even further removed than that of a mortgagor to mortgagee.

likewise fails to show that JBNC exercised excessive control or influence over her decisions.  In fact, it was Margolis—through counsel—who requested JBNC pursue an assignment of the Deed of Trust to HUD through the MOE Program.  *See* Dkt. No. 20-10.  Although in her Response Margolis attempts to paint herself as entirely reliant on JBNC (Dkt. No. 34 at 4), this characterization is belied by the record.  Margolis obtained counsel shortly after her husband passed away.  JBNC had a contractual right, pursuant to the Deed of Trust and Note, to call the Note due and payable following her husband's death.[16]  Dkt Nos. 20, 20-3, 20-9, 20-10.  Margolis, through counsel, requested JBNC instead pursue a different, entirely optional path; and JBNC obliged.  It is unclear how the events demonstrate that JBNC had an excessive amount of control over Margolis.  She has failed to plausibly allege the presence of any factors necessary for an informal fiduciary relationship under Texas law.  Because she has not plausibly alleged the existence of any type of fiduciary relationship, nor that JBNC owed her a fiduciary duty as a matter of law, Margolis' breach-of-fiduciary-duty claim against JBNC should be dismissed.

### H. Negligence-Based Claims (Negligence and Gross Negligence)

Margolis brings two related claims for negligence and gross negligence.  Dkt. No. 20 at 10–12.  In her claim for gross negligence, Margolis states that JBNC "had actual, subjecting awareness of the extreme degree of risk breaching its duties to [Margolis], but nevertheless proceeded with conscious indifference."  *Id.* at 11.  In

---

[16] Margolis has not refuted that the Note became due and payable upon her husband's death.  *See, e.g.*, Dkt. No. 20-10 at 5 (Margolis agreeing and acknowledging that her "spouse's HECM is currently eligible to be called due and payable under the original terms of the mortgage contract.").

articulating her claim for negligence, Margolis states that "Defendants"—which the Court presumes refers to both HUD and JBNC—"breached their duties to [Margolis,] causing [Margolis] to suffer damages." *Id.* at 12.   In its Motion to Dismiss, JBNC notes that Margolis' negligence and gross negligence claims are "pled in an entirely conclusory manner," are "insufficient as a matter of law," and fail to "allege all of the necessary elements[.]"   Dkt. No. 24 at 23.

Under Texas Law, to state a claim for negligence, a plaintiff must allege: (1) a legal duty owed by the defendant to the plaintiff; (2) breach of that duty; and (3) damages proximately caused by such breach. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001).   The threshold inquiry is whether the defendant owed the plaintiff any duty, and if so, what duty was owed. *Nelson v. SCI Texas Funeral Servs., Inc.*, 484 S.W.3d 248, 253 (Tex. App.—Eastland 2016), *aff'd*, 540 S.W.3d 539 (Tex. 2018).   To establish a gross negligence claim, Margolis must establish an ordinary negligence claim and also demonstrate that: (1) when viewed objectively from JBNC's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) JBNC had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others. *See U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012) (collecting cases and other authorities).   "If a plaintiff fails to allege a negligence claim giving rise to actual damages, the plaintiff cannot maintain a gross negligence claim

for punitive damages." *Motten v. Chase Home Finance*, 831 F. Supp. 2d 988, 1007 (S.D. Tex. 2011) (collecting cases).

Here, Margolis has failed to identify any duty that JBNC owed to her. After JBNC identified this deficiency in its Motion to Dismiss, Margolis attempted to rectify it in her Response. She states that "[d]espite th[e] general rule" that "the relationship between a borrower and a lender is not a fiduciary one . . . a loan servicer may still owe a borrower the duty to exercise reasonable care to avoid a foreseeable risk of injury to the borrower." Dkt. No. 34 at 2 (citing authorities). However, Margolis has identified herself as a "non-borrowing spouse," not a "borrower." *See, e.g.*, Dkt. No. 20-10 at 2−3, 5. Further, the Deed of Trust states that the Note will be come due and payable "upon the death of the last surviving borrower." Dkt. No. 20-3 at 6−7. Margolis has never alleged that she was a borrower; if she had, it would be nonsensical for her to have conceded that the Note became due and payable upon her husband's death. Thus, although Margolis alleges—for the first time in her Response—that loan servicers *may* owe borrowers a duty of care, she has not alleged that she is a "borrower." Margolis also states that, pursuant to Texas law, "there is always a duty to correct one's own prior false or misleading statement." Dkt. No. 34 at 2. However, as previously noted, Margolis has not plausibly alleged that any statements JBNC made were either false or misleading.

The Court does note Margolis' creative attempt to identify a duty in her Response. In it, Margolis asserts that "HUD, by virtue of Mortgagee Letter 2015-15, imposed a duty upon JBN[C] to conform to the standards and regulations stated therein." Dkt.

No. 34 at 4.    However, none of the authorities that Margolis cites support her conclusion.    Moreover, as explained above, courts have repeatedly rejected any claim that HUD Regulations alter the private agreement between parties.    *See Johnson*, 830 F.3d at 196; *see also Law*, 587 F. App'x at 794.    Margolis has not plausibly alleged the elements of her negligence claim, and it should accordingly be dismissed. Furthermore, because Margolis has failed to plausibly allege a negligence claim, her gross negligence claim fails as a matter of law.    *See Dekelaita v. BP Amoco Chem. Co.*, 2008 WL 2964376, at *15 (S.D. Tex. July 30, 2008) (reasoning that "a finding of ordinary negligence is a prerequisite to a finding of gross negligence.") (collecting cases).

### I.    Claims for Age Discrimination, Gender Discrimination, Violation of Section 50 of the Texas Constitution, Declaratory Judgment, and Attorneys' Fees

Margolis also brought claims against JBNC for: (1) age discrimination, (2) gender discrimination, (3) failure to provide counseling as required by Section 50 of the Texas Constitution, (4) declaratory judgment, and (5) attorneys' fees.    In its Motion to Dismiss, JBNC moves for the dismissal of each of these claims.    Dkt. No. 24 at 24 (claiming that Margolis "does not plausibly state a claim for age or gender discrimination"); *id.* at 29 (contending that, "[b]ecause the reverse mortgage was entered in 2008, it is governed by a prior version of Section 50" of the Texas Constitution, with which JBNC did comply); *id.* at 31−32 (arguing that Margolis' request for a declaratory judgment is "not an independent cause of action but rather a remedy," to which Margolis is not entitled because "none of [her] other substantive

causes of action are viable."); *id.* at 32 (asserting that, "in a case removed to federal court," such as the instant action, "attorneys' fees are not available under Section 37.009."). Margolis did not address any of these arguments in her Response, nor did she even reference these causes of action. *See generally* Dkt. No. 34.

The Fifth Circuit has held that where a party does not defend its claims against a dispositive motion, the party has abandoned that claim; and dismissal of such claims is proper. *See, e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 678−79 (5th Cir. 2001); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir. 1983). Here, JBNC's Motion to Dismiss raises problems with each of the aforementioned claims. In her Response, Margolis did not refute any of these arguments, nor did she reassert these causes of action. Margolis has therefore abandoned her claims for age discrimination, gender discrimination, violation of Section 50 of the Texas Constitution, declaratory judgment, and attorneys' fees.[17] Each of these claims should be dismissed.

## IV. Recommendation

For the reasons stated above, it is recommended that JBNC's Motion to Dismiss be **GRANTED**, and that Margolis' claims against JBNC be **DISMISSED**.

---

[17] Even if Margolis had restated these causes of action in her Response, the Court would likely find she has failed to state a claim for relief. For example, regarding her age and gender discrimination claims, Margolis' Complaint does not provide any factual support for her bare legal assertion that JBNC discriminated against her. She also has provided no good faith basis for the Court to apply a newer provision of the Texas Constitution—the amended Section 50—to a contract entered into in 2008. Nor does Margolis make a plausible argument that, in light of the clearly-established precedent that Section 37.009 of the Texas Civil Practice and Remedies code does not apply to actions removed to federal court, she has a right to attorneys' fees in this action. *See Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998).

## V.     Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1).


SIGNED on this 24th day of July, 2019, at Brownsville, Texas.


_____

**Ignacio Torteya, III**
**United States Magistrate Judge**